The next and last matter on our calendar is Roy Ticillo v. County of Nassau. If I have mispronounced the plaintiff's name, I know counsel will enlighten me. Good morning. Good afternoon, I should say, Your Honor. Richard Langone for Mr. Roy Ticillo, who's here in the audience. Ticillo, you were good. You were good. So, Judge, Your Honors, the question here is, was there really probable cause to make an arrest at the time, or did the police chief, Capice, put his finger on the scale, so to speak, and influence the determination with respect to whether or not to arrest based upon probable cause? At the outset, Your Honors, I'd like to submit to the court, and I apologize for not putting it in the brief, that the standard of review in this case is de novo. It's a Fourth Amendment finding by Judge Wexler. At the end of a trial order of dismissal, he granted to the defendants. And in Costello v. City of Burlington, 632F3D41, this court said in these Fourth Amendment contexts that it is a de novo determination for the purposes of the case. But did the judge, in dismissing this case, make findings of fact? It's very interesting. He didn't. He wasn't tasked with that. What he said was, his ultimate determination was, well, we have two liars here. One liar is Mr. Tobin, who is the defendant, who refuses to come to trial. He was subpoenaed and didn't show up at the federal court trial. And we know he had lied in many respects, and he's the one who called Capisi. And the judge also said, well, in his opinion, Mr. Tisillo lied. But he never indicated on the record why. He made no finding of fact as to why. He made a conclusory statement that he disbelieved Mr. Tisillo. There are issues that could have gone to the jury. Why did the judge take this away from the jury? I have no idea, Your Honor. I mean, under the facts of this case, it is so perplexing. It appears that what happens is, there's Northern Boulevard running west, and there's Old Northern Boulevard. And the roads kind of converge. Then there is the road that you make a right turn on, Mill Bridge Road, I believe it is. And that's where the steakhouse is, Brian Cooper, right there on the corner. So what goes on is, Mr. Tisillo is on Old Northern Boulevard, and he's got the right of way. And it appears Mr. Tobin, who was standing on, is stopped at a red light on Northern Boulevard, cuts in front of him. Now, because of these roads converging, it's easy to understand people's eyes may be diverted. And Mr. Tisillo may have touched the back of his car, I don't know. Well, that's not before us, the facts of the automobile accident. That's really not before us. It's not. Before us is whether the police had probable cause to arrest, and whether the judge appropriately dismissed this case. Did the judge make findings of fact, or did he make credibility assessments? He made a conclusory credibility assessment that both the plaintiff and the defendant were liars. He made no findings of fact, Your Honor. So, the judge is ordinarily not supposed to do that. No, and respectfully, I think that the judge, the knowledge, the law is very clear that the knowledge of these police officers is imputed to all of them. With respect to Mr. Officer Gomez contacting Chief Capisi, he said it was a big deal that Chief Capisi was involved. He's speaking to the chief for seven or eight minutes. And he says during that time, the chief said he's a good guy, that Mr. Tobin is a good guy. And that becomes essentially the reason why they believe Mr. Tobin over Mr. Tisillo. Wait a second, let me interrupt. So that very issue of whether there was influence should have gone to the jury. Yes. And the judge said in his three paragraph dismissal, they further did an investigation based on the undue influence. Whether it was because of another relative of the chief, they made a determination that there wasn't any. And that was it. So he took that issue away from the jury. Yes, he did, Your Honor. Did you make this argument that he improperly took the issue away from the jury? Or I thought that your argument on appeal was that he just decided it in the wrong way. Well, he dismissed the case. Yeah. So he took it away from the jury. Did you make the argument that it was improper for him to have a directed verdict in that way before it got to the jury? Well, what we argued was that on the appeal, our specific argument is that, and I could read the caption to you, Your Honor, is essentially that based on all the facts, that there was a viable issue as to whether there was probable cause at the time of the arrest, and that the district court abused its discretion in dismissing the civil rights action where the issues of fact existed as to whether the police purposefully turned blind eyes and deaf ears on available exculpatory eyewitness evidence. I thought that part of the decision rested on the fact that even before the call was made to whatever his name is. Chief Capisi. Chief Capisi, Mr. Capisi, there was probable cause. Well, there was the officers had said that, obviously. They had said that, but their testimony was that from Mr. Gomez and the sergeant that there was probable cause even before the call was made. Well, that's what they did say, yes. They made that determination. How could it be? The evidence was in equipoise. Supposedly, Mr. Tosillo hits him in the back and pushes his car 20 feet. Mr. Tosillo has a crack on his plastic license plate holder. There was a scratch on Mr. Tobin's rear bumper. There was no evidence of any debris on the street. There was supposedly some evidence of what appeared to be like a tire mark, but that was never photographed. The purpose of police investigations is to determine the facts before you make an arrest. That goes to my second question, which is you're asking us to embrace this dissipation theory. Correct. And that's your fundamental argument. Is that correct? Yeah. There's a couple of. The rules, my authoritative starting points are, number one, there's a duty to report new information. There's a duty to report information that would take this out of the equipoise, where there's a credibility contest between two people. And it's not only for the officer on the scene. I think Justice Marshall years ago said the strength of the Constitution is the most obvious in the interaction between a citizen and the police. At that moment in time, it's the force of the state that comes into play. These are tremendous powers that these police officers have, and the degradation of arrest is a very profound effect on an individual's life. For that reason, we have the requirement of a neutral magistrate to make a determination of probable cause. Let me go back to the argument that you actually made, Mr. Langone, this dissipation argument. Can you point me to a case in which we've embraced this dissipation argument in the context of assessing probable cause for an unlawful- I think so. I think in Mitchell versus New York, 841F3D72, this court held that failure to make a further inquiry when a reasonable person would have may be evidence of lack of probable cause. You have Mr. Spolino standing there, who's a passenger in the car, in Mr. Tisillo's car, saying nobody wants to speak to him because they have already spoken to Detective Capisi. And in their minds, they're going to make this arrest. This is going to be an arrest. Too often, Your Honor, I have to say it, there is a tendency these days among law enforcement to say that if we do not believe the information, it doesn't constitute Brady. Because we don't agree with the veracity of the witness, because I don't believe- You're talking about probable cause right now, right? Yes, we are. But all of this, it goes to, this information, the neutral magistrate on the following day may have seen this other individual's statement to the police, in which he told the police that, in fact, after this touching, that Mr. Tisillo went into the Brian Cooper parking lot, and it was the individual, Mr. Tobin, who ran up behind him. As Mr. Tisillo was getting out of his car, he was in the back of the SUV getting ready to take his jacket out. When you say that probable cause could have been dissipated in this case, doesn't that amount to a concession or a- No, maybe it's the wrong word, dissipation. I apologize for that word then. Well, that's the word we use throughout. Well, here's the point, though. I mean, the argument is essentially that there was no probable cause. This was a motor vehicle accident. There was anger, as there always is during car accidents. This individual gets on the phone, calls his friend, the police chief, and it gets turned into a big brouhaha. And here's what's really critical. The fact that Gomez says that this is a big deal, that this police chief, he's speaking to him for seven, eight minutes on the phone. He's not telling Lieutenant Posey, he's not telling Detective Bittner that the chief of the police is involved in this case. He says he didn't, but those are the credibility determinations that the jury would have made if the case wasn't- That's right. And, in fact, I think as a matter of law, we impute knowledge when there's an integrated, coordinated investigation. We impute knowledge among the officers to each other. And this is precisely why the law does so, because it's just too facile. I don't know. I wasn't told. You're standing right next to each other. It was their policy and practice. All these police officers are taught, you speak to everybody at the scene. You take statements from everybody at the scene. So you're saying that if they don't speak to everybody at the scene, then there's not probable cause? What I'm saying is all of this goes into the realist, into what- Yes, what I'm saying is had they interviewed Spolino, the evidence would have been, the weight of the evidence- I mean, look, it's a fact-finding determination. I understand the subjectivity involved in this here. No, I'm just trying to figure out what we're asking police officers to do when they come upon a scene. And you're saying that if they haven't identified and spoken to every potential witness, they don't have probable cause. That's what it sounds like you're saying. Well, I think the problem with that, the way you've stated the facts, is incorrect in this case, because even though Posey says she was unaware of Spolino, Spolino is there at the scene. He's a passenger in the car. She doesn't know about it. Please. Detective Bittner comes on the scene. He doesn't know Spolino is there. Then what happens? Spolino, even after Mr. Tisola's arrested, he runs to the police station because he wants to tell them what happened. Detective Bittner comes on, he really doesn't even want to take his statement. Did Spolino testify at the trial? Yes. Yes, he did testify. Your time has expired. You've reserved two minutes for about a minute from the county. Thank you. May it please the court, Christy Kensing on behalf of Nassau County FLEs. Representing all the defendants? All of them except for Tobin. Oh, but all the county defendants? Yes. Okay. This case revolves around probable cause, and there was ample probable cause for this arrest. We want to start first. We had Tobin's sworn statement to the police officers. Then they looked at the physical evidence that corroborated his version of events. There was damage on his rear bumper and his front hood, as well as damage on Mr. Tisola's front bumper. Then they spoke to three independent eyewitnesses in the valet parking lot, in Brian Cooper's parking lot. All three contradicted Tisola's version of events, stating that they didn't observe any altercation in the parking lot. About the parking attendance? Yes. They later did come forward and say they saw it and that Tisola was correct, didn't they? They did. They did on June 3rd. This event took place on June 1st, so he had already been released on bail at that time. Then taking into account their revised statements, when the assistant, the ADA Correo, reviewed the complaint then, he said they still had a sufficient felony complaint to go forward on the charges, regardless of the revised statement from, I believe, two of the three parking attendants revised their statements. I'm just trying to understand. I understand the argument on probable cause. It's very compelling. But why would the judge, who went through a trial, not let the jury decide these issues of credibility? I don't think that there were any issues to go forward for the jury to decide, because there was no evidence of undue influence for them to determine. You moved for dismissal? You moved for JMOL? Yes. After both parties rested, the county moved for the case to be dismissed. What about the issue of the credibility of talking to the police chief? They said they did an investigation. It didn't affect anything. Isn't that a question for the jury? No, Your Honor. I don't believe it is, because there's no evidence that there was any undue influence for him to impact. That was the very point. He argued that there was an undue influence, and you're saying there was no evidence. But he put on evidence of the phone call, and that was for the jury to decide. If you're correct, the jury would have dismissed this case pretty quickly. I believe the testimony states that the determination to arrest by Sergeant Posey was made prior to the phone call with Chief Capisi, and that she was unaware that Chief Capisi had even made a phone call until two years after. She said? Yes. Was there any evidence to suggest that she was aware or was present when the call came? The only thing she said, she testified that she was unaware that there was a phone call with him until two years later at the first day of the criminal trial. Is there any other witness who says, well, the officers were right there when the call came, and I wasn't arrested until later, for example, if it were Tiscilla? No, there's nothing in the record to indicate that. It challenges the credibility of the police officers. Correct. And yet they testified, right? Correct. All right, continue. I'm sorry, I didn't mean to interrupt you. Oh, no, that's okay. It's okay. So going forward on probable cause, it doesn't require absolute certainty, so I think that having the statement, the three individual eyewitnesses, the physical damage that corroborated Mr. Tobin's version of events in conjunction with Detective Bittner's own investigation, which happened after in which he followed up the next day, went back to the scene, left his card in case any of the valets wanted to change their statements at that time. He observed the tire marks in the road and looked to see if there were any surveillance video cameras, anything of that nature, and found sufficient probable cause. ADA Correo additionally did his own investigation. It went to Early Case Assessment Bureau. They looked through the facts of the case and, again, found that there was probable cause. And as I said before, this was with the updated valet statements. They looked through and said the felony complaint on its face was sufficient, unless there are any. Just so that I'm clear, I mean, I'm not even sure why the timing of this call is all that important. So if the call between Chief Capisi and Officer Gomez had occurred before the officer interviewed Mr. Tobin or Mr. Chuchillo, you'd still be making the argument that there was probable cause, right? Correct. Thank you, Mr. Longo. You have two minutes for rebuttal. First of all, with respect to this ECAB evaluation, I've never seen a case dismissed at the ECAB stage, the Early Case Assessment Bureau, and I do a lot of practice in the master's department. Everything survives ECAB analysis as far as I've seen. With respect to the detective coming back the following day, who we spoke to the following day was a manager of the Brian Cooper, and he left his card there and said if anybody has anything to say, any of the people, have them contact me. But, Your Honor, when I had mentioned this idea of dissipation, it's the concept that the probable cause determination is a fluid notion that can evolve even after arrest. Even after the arrest, the police can develop new information that comes into their total mix of information in making this. You're suing them for an unlawful arrest. Correct. Correct. We're suing them for a Fourth Amendment violation, for an unlawful arrest and prosecution. There's also a malicious prosecution claim here. So, Your Honors, the facts of the case, the simple fact is that Spolino's testimony, the fact that they don't even want to talk to him, is powerful circumstantial evidence of, in fact, that there was an understanding based upon Chief Capisi's involvement, placing his finger on the scale, that results in Mr. Ticillo being placed under arrest for what was really just an ordinary traffic accident. Evidence into the record that would allow a well-charged jury to conclude that there was a finger on the scale, a thumb on the scale? Well, I think that that's part of the credibility determination of the police. I think we would be entitled to a jury instruction that says that knowledge is imputed among the agents, God bless you, is imputed among the officers responding to the scene and working in tandem on a joint investigation. I think that if you look at the circumstantial evidence, in the objective sense, it shows no more than a car accident and doesn't really reflect this level of aggressiveness that's being spoken to. There's a witness who testified to the aggressiveness and what went on, right? There's a witness who said all this. Your view is that the officers had an obligation to get the other side of the story. I think that's what you're saying, right? Well, there is no witness. Mr. Tobin never testified. All right, but there's evidence that's been presented- Of what Tobin told the police. Right, and this is not a criminal case. This is a civil case against the officers, right? Correct. So the officers stated what they heard and what they relied on. Right. And your theory seems to be that they nonetheless had an obligation to do more because- Well, my theory is that they're lying. My theory is that they were well aware that Chief Capisi had called, and that Chief Capisi said that this is my friend, and that during that seven-minute conversation with Officer Gomez, they were not just saying, it wasn't just to say that, oh, he's a nice guy. Mr. Tobin had a- Your view is they were lying about what Tobin told them also. Absolutely. Yeah, I believe that Tobin was lying. It was perpetuated by Detective Gomez, and it was perpetuated by the rest of the officers by their inaction, by their acts of omission, by their not doing what they should have done, which was interview, and I'm not saying go interview at knock on doors. This is a passenger in the car, an eyewitness to the scene that you don't even want to speak to. It wasn't right, Your Honor. I think it violates the- There is plenty of law in this circuit on the duty to make further inquiry, and I told you, Mitchell, there's the duty to report new information that could dissipate probable cause. You just decided that in U.S. v. Pabon. The duty to follow up, the failure to follow up on important information, Cologne v. City of New York. Oh, that was a New York State case, but that was- And the knowledge imputed is this Camalia v. City of New York, 879F2D1032. They're all in my brief. With respect, this was purely a factual determination that had to be made, and the judge took it away from the jury because he decided that I think Mr. Tosillo's a liar, and I think Mr. Tobin's a liar. But that was the- Those were the essential questions because Mr. Tosillo was giving his side of the story. Let's not forget that. We've got Mr. Tobin's side, but Mr. Tosillo was giving his side of the story. And what's going to determine in the balance who is going to be believed? First of all, I would respectfully submit that the proven thing that the officer should have done at that point was do an investigation, not just immediately arrest him, and you arrested him for a felony on top of that. Let's just stay focused on the arguments here. So the judge concluded that I think everybody admits that both Mr. Tobin and Mr. Tosillo lied. Yes. Does everybody admit that? No. I think Mr. Tosillo told the truth. And there's a finding of probable cause, no finding of qualified immunity, correct? Correct. Your time has expired. Thank you, Your Honor. And that will reserve decision on this case, and I will ask the clerk to adjourn court. Court is adjourned.